1  Richard L. Seabolt (SBN 67469)
   Suzanne R. Fogarty (SBN 154319)
2  Oliver E. Benn (SBN 244618)
   DUANE MORRIS LLP
3  Spear Tower
   One Market Plaza, Suite 2200
4  San Francisco, CA  94105-1127
   Telephone: 415.957.3000
5  Facsimile: 415.957.3001
   E-mail:   RLSeabolt@DuaneMorris.com
6            SRFogarty@DuaneMorris.com
             OBenn@DuaneMorris.com
7
   Attorneys for Defendant,
8  ZYNGA GAME NETWORK, INC.

9
                    IN THE UNITED STATES DISTRICT COURT
10
                   FOR THE NORTHERN DISTRICT OF CALIFORNIA
11

12
   REBECCA SWIFT, individually, on behalf of the        Case No.: CV 09-5443 SBA
13 general public, and all others similarly situated,
                                                         DEFENDANT ZYNGA GAME
14                Plaintiff,                              NETWORK, INC.'S NOTICE OF
                                                         MOTION AND MOTION TO DISMISS
15        v.                                             CLASS ACTION COMPLAINT;
                                                         CERTIFICATION OF COMPLIANCE
16 ZYNGA GAME NETWORK, INC.; and                         WITH STANDING ORDER;
   FACEBOOK, INC.,                                       MEMORANDUM OF POINTS AND
17                                                       AUTHORITIES
                  Defendants.
18                                                       Date:     May 25, 2010
                                                         Time:     1:00 p.m.
19                                                       Judge:    Hon. Saundra B. Armstrong
                                                         Ctrm.:    1
20
                                                         Complaint Filed:    November 17, 2009
21

22

23

24

25

26

27

28
   Zynga Motion to Dismiss
   CV 09-5443 SBA

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

NOTICE OF MOTION AND MOTION...................................................................................1

CERTIFICATION OF COMPLIANCE............................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES...............................................2

I.    INTRODUCTION...........................................................................................................2

II.   FACTUAL ALLEGATIONS OF THE COMPLAINT .............................................3

III.  STANDARD ON MOTION TO DISMISS WHEN CDA DEFENSE RAISED.........................4

IV. ARGUMENT ................................................................................................................5

   A.  Plaintiff's Claims Are Barred by the Communications Decency Act of 1996.........................6

     1.   Immunity Under Section 230 of the CDA .............................................................6

     2.   Courts Have Uniformly Interpreted the CDA to Provide Broad Immunity..........................8

     3.   Zynga Falls Squarely Within The Immunity Required by Section 230 Because Plaintiff's Claims All Derive From Content Provided by Third Parties ..............................9

        a.   Zynga Is a Provider of an Interactive Computer Service as Defined by the CDA ...........10

        b.   Plaintiff's Causes of Action Treat Zynga as a Publisher or Speaker ...............................10

        c.   Plaintiff Seeks to Hold Zynga Liable For the Content of Third Parties.............................12

     4.   *Goddard v. Google, Inc.* Is Directly On Point and Requires That the Claims Against Zynga be Dismissed................................................................................................16

   B.  The Complaint Sounds in Fraud But Is Not Pled With Particularity .......................................20

V.  CONCLUSION................................................................................................................23

# TABLE OF AUTHORITIES

**Federal Cases**

*Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937 (2009)................................3-4, 14-15, 18

*Barnes v. Yahoo!*, 570 F.3d 1096 (9th Cir. 2009) ........................................4-5, 7, 9-11

*Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003) ................................ 4, 6, 8-9, 12-13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)................................3, 15-16

*Ben Ezra, Weinstein, & Co., Inc. v. America Online Inc.*,
    206 F.3d 980 (10th Cir. 2000) ................................................................6, 8

*Blumenthal v. Drudge*, 992 F.Supp. 44 (D.D.C. 1998) ................................8, 12-13, 18

*Braun v. Soldier of Fortune Magazine, Inc.*, 968 F.2d 1110 (11th Cir. 1992)............10

*Carafano v. Metrosplash*, 339 F.3d 1119 (9th Cir. 2003)................................4, 8, 12, 17-18

*Clegg v. Cult Awareness Network*, 18 F.3d 752 (9th Cir. 1994) ................................3

*Dimeo v. Max* (E.D. Pa. 2006)................................................................8

*Doe v. MySpace, Inc.*, 528 F.3d 413 (5th Cir. 2008) ................................8, 10

*Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) ................................ 1, 4, 6-7, 10-14, 17

*Goddard v. Google, Inc.*, 2008 WL 5245490 (N.D.Cal. 2008) ................................12-13, 15-18

*Goddard v. Google, Inc.*, 640 F.Supp.2d 1193 (N.D.Cal. 2009)............ 1, 4, 7-8, 11, 13, 15-17, 19

*Green v. America Online*, 318 F.3d 465 (3d Cir. 2003) ................................8

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ................................5, 18-21

*Liveuniverse, Inc. v. MySpace, Inc.*, 2007 WL 6865852 (C.D.Cal. 2007) ................................7

*Moss v. U.S. Secret Service*, 572 F.3d 962 (9th Cir. 2009) ................................3

*Nemet Chevrolet, Ltd. v. ConsumerAffairs.com*, __ F.3d ___, 2009 WL 5126224
    (4th Cir. 2009)................................................................4-5, 8, 14

*Noah v. AOL Time Warner, Inc.* (E.D. Va. 2003) ................................8

*Parker v. Google, Inc.*, 422 F. Supp. 2d 492 (E.D. Pa. 2006) ................................8

*Perfect 10, Inc. v. CCBill, LLC*, 340 F.Supp.2d 1077 (C.D.Cal 2004) ................................8

ii

*Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530 (9th Cir. 1984) .......................................3

*Rosal v. First Federal Bank of Calif.*, __ F.Supp.2d __, 2009 WL 2136777
   (N.D.Cal. 2009) ...................................................................................................20

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003).............................................19, 21

*Zeran v. America Online, Inc.*, 129 F.3d 327 (4th Cir. 1997) .........................................6-8, 10, 13

## State Cases

*Austin v. CrystalTech Web Hosting*, 125 P.3d 389 (Ariz. Ct. App. 2005) ....................................8

*Barrett v. Rosenthal*, 40 Cal.4th 33 (2006)..........................................................................6-8, 13

*Delfino v. Agilent Technologies, Inc.*, 145 Cal.App.4th 790 (2006) .........................................9

*Doe II v. MySpace Inc.*, 175 Cal.App.4th 561 (2009) ...........................................................6-8

*Doe v. AOL*, 783 So. 2d 1010 (Fla. 2001) .............................................................................8

*Engalla v. Permanente Med. Group, Inc.*, 15 Cal.4th 951 (1997) .............................................20

*Gentry v. eBay*, 99 Cal.App.4th 816 (2002) .............................................................8, 12-13, 18

*Lauriedale Associates, Ltd. v. Wilson*, 7 Cal.App.4th 1439 (1992) .............................................20

*McBride v. Boughton*, 123 Cal.App.4th 379 (2004).................................................................20

*Melchior v. New Line Productions, Inc.*, 106 Cal.App.4th 779 (2003).......................................20

*Schneider v. Amazon.com, Inc.* 108 Wash.App. 454 (2001) .....................................................8

## Federal Statutes and Rules of Court

47 U.S.C. § 230(b)...................................................................................................................6

47 U.S.C. § 230(b)(1)-(2) ........................................................................................................9

47 U.S.C. § 230(b)(2) ..............................................................................................................6

47 U.S.C. § 230(c)(1) ................................................................... 1, 3, 4, 6, 8-9, 11-12, 18

47 U.S.C. § 230(e)(3) ............................................................................................................6-7

47 U.S.C. § 230(f)(2)............................................................................................................9, 12

47 U.S.C. § 230(f)(3)..............................................................................................................11

47 U.S.C. § 941(e)(1) ..............................................................................................................7

iii

Federal Rule of Civil Procedure 9(b) .................................................................5, 18-19

Federal Rule of Civil Procedure 11(b)(3) ...................................................................18

Federal Rule of Civil Procedure 12(b)(6) ...............................................................4, 14

**Other Authorities**

H.R. Rep. No. 107-449 (2002) ......................................................................................8

Zynga Motion to Dismiss
CV 09-5443 SBA

**NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 25, 2010, at 1:00 p.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Saundra Brown Armstrong, Defendant Zynga Game Network, Inc. will move the court for an order dismissing Plaintiff Rebecca Swift's Class Action Complaint pursuant to the Federal Rule of Civil Procedure 12(b)(6).

This motion is based on the Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, the [Proposed] Order, all pleadings on file in this action, the oral argument of counsel, and any other information that may be properly considered by the Court.

Dated: January 20, 2010                       DUANE MORRIS LLP


                                              By:      _____/s/_____
                                                       Richard L. Seabolt
                                                       Attorneys for Defendant,
                                                       ZYNGA GAME NETWORK, INC.

**CERTIFICATION OF COMPLIANCE WITH STANDING ORDER**

I certify that on January 14, 2010, I met and conferred with J.R. Parker, counsel for Plaintiff Rebecca Swift, via telephone (and previously via exchange of emails) and discussed the arguments that Defendant Zynga Game Network, Inc. intended to make in the present Motion to Dismiss.


Dated: January 20, 2010                       DUANE MORRIS LLP


                                              By:      _____/s/_____
                                                       Richard L. Seabolt
                                                       Attorneys for Defendant,
                                                       ZYNGA GAME NETWORK, INC.

///

///

1

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

Plaintiff Rebecca Swift seeks to bring a class action against Zynga and Facebook based on the allegedly misleading content of third-party advertisers.  Putative class representatives repeatedly have attempted to hold Internet companies liable for content they did not create or develop.  These claims have consistently failed.  Through Section 230 of the Communications Decency Act of 1996 (the "CDA"), Congress has provided broad immunity to "interactive computer service" providers for claims arising from the publication or distribution of third-party content.  47 U.S.C.    § 230(c)(1).  Courts across the country have repeatedly confirmed that the CDA immunizes hosts and platforms like Zynga against these types of claims.  As the Ninth Circuit observed, Congress made the policy determination that the Internet should develop based on self-regulation and the power of market forces, rather than having its growth retarded by the crippling costs of litigation.  *Fair Housing Council of San Fernando Valley v. Roommate.com, LLC*, 521 F.3d 1157, 1175 (9th Cir. 2008).  Aggrieved parties can pursue the content's originators, but not the intermediaries.

This Court recently held that the CDA immunized Google against a set of allegations very similar to Swift's claims, where a putative class representative sought to hold Google liable for harm caused by third-party advertising.  *Goddard v. Google, Inc*., 640 F.Supp.2d 1193, 1197-1201 (N.D.Cal. 2009).  As Judge Fogel noted, even though the claims were "artfully pled" to avoid the reach of the CDA, the complaint impermissibly tried to impose liability on Google for publishing third party content.  Similarly here, all of Swift's claims are based on content created or developed by third-party advertisers, not Zynga.  Plaintiff uses legal conclusions that Zynga was involved in developing the content, but pleads no *facts* to support such an assertion, and ultimately admits that it seeks to hold Zynga liable because it "published" the ads and "made [them] available to users."  This is the classic type of allegation for which the CDA provides immunity.

Swift's claims also fail because they are grounded in fraud but not pled with particularity.  The allegations insinuate that Zynga conspired with, or aided and abetted, the allegedly misleading conduct of third-party advertisers.  But the complaint does not identify any of the "who, what, when,

where, and how" that the Ninth Circuit requires for allegations of fraud.  Plaintiff's claims are all

unsupported – and unsupportable – legal conclusions.

## II.    FACTUAL ALLEGATIONS OF THE COMPLAINT

Zynga develops games that members of social networking websites such as Facebook and

MySpace can play on those websites.  Complaint, at ¶¶ 1, 16.  Examples of these interactive online

games are FarmVille, where players compete with friends online to build the best virtual farms, and

YoVille, a virtual world where players create their own characters, make friends, and acquire virtual

goods.  *See* ¶¶ 1, 3, 15, 20.  According to the Complaint, more than 40 million individuals in the

U.S. are active players of Zynga's games.  ¶ 15.

All of Zynga's games are free to play, and players do not need to pay any money to progress

through the games.  ¶¶ 2, 16.  Players can earn virtual currency by performing tasks within the

games themselves.  *Id*.  As Plaintiff admits, "the games are *designed* to allow players to *earn* 'virtual

currency' in each game."  ¶ 2 (emphasis added).

In addition to earning virtual currency by performing tasks in the game, players can, if they

choose, obtain currency in two other ways.  ¶¶ 2, 16.  They can buy virtual currency from Zynga, or

they can receive currency from third-party advertisers by "accepting" their advertising offers.  ¶¶ 10,

16.  These third-party ads are not created or developed by Zynga.  ¶¶ 10, 16.  Instead, as Plaintiff

describes it, the third-party ads are merely "made available to users" by Zynga (¶ 2), or

"promulgated" by Zynga (¶¶ 6, 10) or, most accurately, "published" by Zynga.  ¶ 6.  Plaintiff alleges

that some *third-party ads* were misleading and that she was misled *by third-party advertisers* into

paying for offers she did not want, on two separate occasions.  ¶¶ 17, 21-24.

Plaintiff alleges that in approximately April, 2009, she provided her cell phone number to a

third-party advertiser because she wanted to earn points in one of Zynga's games, YoVille.  ¶ 21.

Plaintiff does not attach a copy of the ad, describe its contents, explain her understanding of the ad,

describe what she understood the third-party advertiser would do with her cell phone number, or

describe how she thought she was "earning" points by doing what she did.  *See*, ¶ 21.  Nonetheless,

she alleges that $9.99 charges appeared without her consent on her April cell phone bill, and then –

again – on her May, June, and July bills.  ¶ 21.  Plaintiff does not claim that she tried contacting her

3

cell phone company, the third-party advertiser, or anyone else (including Zynga or Facebook, the parties she is now suing) to reverse these charges. *See*, ¶ 21; *cf.* ¶ 24.

In June 2009, Plaintiff then alleges that she provided her debit card number to another third-party advertiser to receive more points in YoVille. ¶ 22. She alleges that her bank account was debited $165.85 by the advertiser without her consent. ¶ 23. She does not state whether she conformed to customary debit card requirements by entering her PIN number on the third-party Internet site with her debit card number – or, somehow, provided her signature to the third-party advertiser. Plaintiff alleges that she made "repeated efforts" to obtain a refund, but does not describe who she contacted or tried to contact, or when and how any such "efforts" were made. *Id.* She does not identify the name of the bank issuing her debit card. Plaintiff does not allege that she made any attempt to contact Zynga, before she sent the statutory notice letter necessary to seek damages under the Consumer Legal Remedies Act, the day before filing her lawsuit.

Plaintiff seeks to bring causes of action on her own behalf, and as a class representative, for unjust enrichment and for violations of the UCL and CRLA. Plaintiff seeks to represent all U.S. residents who earned virtual currency by "respon[ding] to any lead-generating offer or advertisement" and were "charged money as a result." ¶ 24. The proposed class definition does not distinguish between users who were charged consensually, and those charged wrongfully. ¶ 24.

### III.    STANDARD ON MOTION TO DISMISS WHEN CDA DEFENSE RAISED

A complaint may be dismissed for failure to state a claim upon which relief may be granted for one of two reasons: (1) lack of a cognizable legal theory; or, (2) insufficient facts under a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984). All allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994). However, allegations that merely state legal conclusions, even if couched in factual terms, "are not entitled to an assumption of truth." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1951 (2009) ("*Iqbal*")). Even under liberal pleadings standards, a complaint must do more than "plead[] facts that are 'merely consistent with' a defendant's liability." *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. 544,

4

557 (2007)); *Moss*, 572 F.3d at 969.  Instead, the plaintiff must set forth enough factual information to make it "plausible" rather than just "possible" that the defendant is liable.  *Id.*

Moreover, in cases where, as here, the defendant makes a Rule 12(b)(6) motion to dismiss based on Section 230 of the Communications Decency Act of 1996 ("CDA"), any doubts as to the "zone of CDA immunity" must be resolved in favor of immunity, and the motion should be granted. *Goddard v. Google, Inc.*, 640 F.Supp.2d 1193, 1202 (N.D.Cal. 2009) (citing *Fair Housing Council of San Fernando Valley v. Roommate.com, LLC*, 521 F.3d 1157, 1174 (9th Cir. 2008).)  As this Court recently stated:

> [There is] a special form of "prejudice" to defendants who improperly are denied early dismissal of claims falling within the zone of CDA immunity . . . [b]ecause the CDA "must be interpreted to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles."

*Id.* (quoting *Roommate.com*, at 521 F.3d at 1174, 1175); *see also*, *Nemet Chevrolet, Ltd. v. ConsumerAffairs.com*, __ F.3d ___, 2009 WL 5126224, *2 (4th Cir. 2009) (citing *Roommate.com* for same proposition).  Accordingly, Plaintiff's claims against Zynga should be dismissed based on the immunity afforded by the CDA.

## IV.    ARGUMENT

Plaintiff seeks to hold Zynga liable for the allegedly misleading content of third-party advertisers.  As such, her claims are barred by the Communications Decency Act of 1996 (the "CDA").  Section 230 of the CDA immunizes Internet companies against claims seeking to hold them liable for content provided by third parties.  47 U.S.C. § 230(c)(1).  Immunity extends to any causes of action based on the decisions of a provider of an "interactive computer service," like Zynga, regarding the publishing, distributing, screening, and deletion of third-party content.  *Id.*; *Carafano v. Metrosplash*, 339 F.3d 1119, 1124-25 (9th Cir. 2003); *Batzel v. Smith*, 333 F.3d 1018, 1031-1032 (9th Cir. 2003).  Recently, this Court, Hon. Jeremy Fogel, dismissed a class action complaint with nearly identical allegations, applying CDA immunity to claims seeking to hold Google liable for the content of third-party advertisers.  *Goddard v. Google, Inc.*, 640 F.Supp.2d 1193, 1197-1201 (N.D.Cal. 2009) ("*Goddard II*"); *see also, Barnes v. Yahoo!*, 570 F.3d 1096, 1101

5

1 (9th Cir. 2009) (citing negligent publication of advertising as example of common law cause of

2 action to which CDA immunity would apply).

3        All of Plaintiff's claims are based on content created or developed by third-party advertisers,

4 not Zynga. As this Court held in *Goddard II*, no matter how "artful [the] pleading" in its attempts to

5 avoid the immunity of CDA section 230, the claims must fail when they seek to hold providers of

6 online services liable for content created or developed by others. *Id*. at 1195. For this reason,

7 Plaintiff cannot state a claim upon which relief can be granted under any of her causes of action.

8 *See*, *Nemet Chevrolet, Ltd.*, ___ F.3d ___, 2009 WL 5126224, *5 (affirming dismissal based on CDA

9 immunity where complaint failed to allege how defendant website "contributed to the allegedly

10 fraudulent nature of the [third party] comments at issue").

11        Plaintiff's claims also fail because they are all grounded in fraud, but not pled with

12 particularity. Any causes of action alleging that a defendant engaged in a fraudulent course of

13 conduct must satisfy the particularity requirement of Federal Rule of Civil Procedure 9(b). *Kearns*

14 *v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Plaintiff seeks to hold Zynga liable for

15 allegedly conspiring with or aiding and abetting the allegedly misleading and fraudulent conduct of

16 third-party advertisers. But the complaint uses only vague, conclusory terms that do not identify the

17 particular facts constituting Zynga's alleged wrongful conduct. Plaintiff does not identify any

18 specific conduct *of Zynga*, only making the conclusory allegation – without explanation – that Zynga

19 "encouraged Plaintiff to accept the advertisement at issue." Complaint, ¶ 25. Plaintiff's claims are

20 grounded in fraud but do not allege any *facts* identifying conduct by Zynga that caused Plaintiff any

21 harm.

**A.     Plaintiff's Claims Are Barred by the Communications Decency Act of 1996.**

**1.     Immunity Under Section 230 of the CDA.**

24        In 1996, Congress enacted Section 230 of the CDA, which provides in relevant part as

25 follows:

> No provider or user of an interactive computer service shall be treated
> as the publisher or speaker of any information provided by another
> information content provider.

47 U.S.C. § 230(c)(1).  Congress explained that one of the reasons for passing the immunity

provision was to foster the development of the Internet in an environment "unfettered" by

government regulation.  Subsection (b) of Section 230 provides:

> It is the policy of the United States -
>
> (1) to promote the continued development of the Internet and other interactive computer services and other interactive media;
>
> (2) to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation . . .

47 U.S.C. § 230(b); *see also Batzel*, 333 F.3d at 1027 ("Congress wanted to encourage the unfettered

and unregulated development of free speech on the Internet, and to promote the development of e-

commerce.")  The immunity provided by Section 230 applies so as to preempt all inconsistent state

causes of action.  47 U.S.C. § 230(e)(3);  *Gentry v. eBay*, 99 Cal.App.4th 816, 830-34 (2002).

Starting from the first, seminal appellate opinion interpreting Section 230, *Zeran v. America

Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997), through to the most recent cases analyzing the

statute, courts have repeatedly and unequivocally reached the same conclusion -- that Congress

intended to provide "broad immunity" to websites for civil liability based on content supplied by

third parties.  *Fair Housing Council of San Fernando Valley v. Roommate.com, LLC*

("*Roommate.com*"), 521 F.3d 1157, 1175 (9th Cir. 2008) (the CDA "must be interpreted to protect

websites not merely from ultimate liability, but from having to fight costly and protracted legal

battles"); *see also Doe II v. MySpace Inc.*, 175 Cal.App.4th 561, 568 (2009) ("the legislative history

demonstrates Congress intended to extend immunity to all civil claims.").

One of the main reasons for this expansive immunity is that Congress wanted the Internet to

develop in an atmosphere where market forces rather than government heavy-handedness and

aggressive litigation would retard its growth.  47 U.S.C. § 230(b)(2); *Roommate.com*, 521 F.3d at

1175.  This was true both for websites that sought to filter content and those that did nothing at all.

"Congress contemplated self-regulation, rather than regulation compelled at the sword point of tort

liability . . .  [T]he immunity conferred by section 230 applies even when self-regulation is

unsuccessful, or completely unattempted." *Barrett v. Rosenthal*, 40 Cal.4th 33, 53 (2006).

7

Simply stated, Congress recognized that it would be more effective for the "millions of users" of a website to vote with their feet – by going to other websites – rather than by filing court papers. *Doe II*, 175 Cal.App.4th at 569; *see generally, Liveuniverse, Inc. v. MySpace, Inc.*, 2007 WL 6865852 at *10 (C.D.Cal. 2007) (discussing how market forces and rapid technological changes impact traditional legal doctrines). This would more effectively curb questionable conduct, and foster the development of the Internet, as compared to litigation. *Goddard,* 640 F.Supp.2d at 1202.

As illustrated by the substantial volume of CDA cases cited in the section immediately below, claims that might otherwise exist based on state common law and statutes are preempted in the context of interactive computer services like Zynga. 47 U.S.C. § 230(e)(3); *see also, Barnes v. Yahoo!*, 570 F.3d 1096, 1101 (9th Cir. 2009) (citing negligent publication of advertising as example of common law cause of action preempted and for which CDA immunity would apply); *Goddard II*, 640 F.Supp.2d at 1197-1201 (Fogel, J.) (Google immune under CDA from statutory and common law violations seeking to hold it liable for allegedly providing tools that furthered fraudulent third-party advertising). Congress made the policy choice for self-regulation rather than protracted litigation. *Roommate.com*, 521 F.3d at 1175; *Barrett*, 40 Cal.4th at 53.

An aggrieved plaintiff is not left without recourse, but must pursue the originator of the content, rather than the intermediary. *Zeran*, 129 F.3d at 331 ("None of this means, of course, that the original culpable party who posts [the harmful content] would escape accountability"); *Goddard II*, 640 F.Supp.2d at 1201-1202 (noting that plaintiff can still sue the third party advertisers).

As will be discussed, Plaintiff's allegations as to Zynga fall squarely within the type of conduct to which Congress intended CDA immunity to apply.

### 2.   Courts Have Uniformly Interpreted the CDA to Provide Broad Immunity.

Consistent with the Congressional intent,[1] courts have consistently held that Section 230 provides broad immunity for all causes of action that would seek to hold an interactive computer

---

[1]   Six years after passing the CDA, Congress confirmed the courts had correctly interpreted its intent with respect to CDA immunity. In 2002, when Congress passed the "Dot Kids Implementation and Efficiency Act" in 2002, it specifically extended the protections of Section 230 to cover certain entities that would operate in the new child-friendly "kids.us" sub-domain. 47 U.S.C. § 941(e)(1). Citing several of the opinions noted in this section, the definitive

1  service liable for content created or developed by a third party. *Goddard II*, 640 F.Supp.2d at 1197-

2  1201 (fraud, breach of contract, negligence, and other statutory and common law violations); *Perfect*

3  *10, Inc. v. CCBill, LLC*, 340 F.Supp.2d 1077, 1110 (C.D.Cal 2004), aff'd *Perfect 10, Inc. v. CCBill,*

4  *LLC*, 488 F.3d 1102, 1118-19 (9th Cir. 2007) (causes of action for violation of UCL and other

5  consumer protection statutes); *Gentry*,  99 Cal.App.4th at 830-34 (same, and also negligent

6  misrepresentation); *see also Carafano*, 339 F.3d at 1125 (negligence); *Batzel*, 333 F.3d at 1031-1032

7  (defamation); *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (negligence); *Green v.*

8  *America Online*, 318 F.3d 465, 471 (3d Cir. 2003) (negligence and contract claims); *Ben Ezra,* 206

9  F.3d at 986; *Zeran*, 129 F.3d at 330 (negligence); *Dimeo v. Max* (E.D. Pa. 2006) 433 F.Supp.2d 523,

10  530-31 (defamation); *Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 501 (E.D. Pa. 2006) (defamation,

11  invasion of privacy, and negligence liability); *Noah v. AOL Time Warner, Inc.* (E.D. Va. 2003) 261

12  F. Supp. 2d 532, 538, aff'd, 2004 WL 602711 (4th Cir. 2004) (negligence and defamation);

13  *Blumenthal v. Drudge*, 992 F.Supp. 44, 49-52 (D.D.C. 1998) (defamation); *Barrett v. Rosenthal*, 40

14  Cal.4th at 40 (same); *Doe II*, 175 Cal.App.4th at 566 (negligence); *Doe v. America Online, Inc.*, 783

15  So.2d 1010, 1013-1017 (Fla. 2001) (same); *Austin v. CrystalTech Web Hosting*, 125 P.3d 389, 393–

16  94 (Ariz. Ct. App. 2005) (same); *Schneider v. Amazon.com, Inc.* 108 Wash.App. 454, 461-463

17  (2001) (negligent misrepresentation, tortious interference, and breach of contract).

18     **3.    Zynga Falls Squarely Within The Immunity Required by Section 230**
19         **Because Plaintiff's Claims All Derive From Content Provided by Third**
        **Parties**.

20     A defendant is immune from liability under Section 230 if: (1) it is "a provider or user of an

21  interactive computer service;" (2) the plaintiff seeks to treat the defendant as a publisher or speaker;

22

23  committee report accompanying the new statute stated that "courts have correctly interpreted
24  section 230(c)," and that "[t]he Committee intends these interpretations of Section 230(c) to be
    equally applicable to those entities covered by [the new statute]." H.R. Rep. No. 107-449, at 13
25  (2002) (citing *Zeran*, 129 F.3d 327; *Ben Ezra*, 206 F.3d 980; *Doe v. AOL*, 783 So. 2d 1010 (Fla.
    2001).  The more recent cases cited in this section and elsewhere in this brief have heavily relied
26  on those earlier cases and have adopted their interpretation of the CDA. *See, e.g. Batzel*, 333 F.3d
    at 1027-1030 (frequently citing *Zeran*, and also citing *Ben Ezra*, in its interpretation of CDA);
27  *Nemet Chevrolet, Ltd.*, __ F.3d ___, 2009 WL 5126224, *1-2, *6 (frequently citing *Zeran*).
    (same).

28

9

and, (3) the content at issue is "information provided by another information content provider." 47 U.S.C. § 230(c)(1); *Carafano,* 339 F.3d at 1123.  Zynga falls directly within the statutory immunity.

### a.   Zynga Is a Provider of an Interactive Computer Service as Defined by the CDA.

Zynga is without doubt a "provider . . . of an interactive computer service."  47 U.S.C. § 230(c)(1).[2]  "Courts have broadly interpreted the term 'interactive computer service' under the CDA."  *Delfino v. Agilent Technologies, Inc.*, 145 Cal.App.4th 790, 805 (2006).  The term "includes a wide range of cyberspace services."  *Batzel,* 333 F.3d at 1030, fn. 15; *see also Delfino*, 145 Cal.App.4th at 805 (citing Ninth Circuit and other federal and state courts finding immunity for wide range of Internet services including an auction website; a library; an online dating service; a non-profit website and listserv; an electronic bulletin board operator; a search engine; a computer rental company; and, an online retailer.)  This expansive interpretation is consistent with Congress' intent to allow the Internet to develop without unnecessary, rigid government regulation.  47 U.S.C. § 230(b)(1)-(2).

Even without these judicial interpretations, Zynga easily fits within the plain meaning of a "provider or user of an interactive computer service."  Zynga provides interactive games to users of social networking platforms such as Facebook and MySpace.  Complaint, ¶¶ 1, 14-15.  In Plaintiff's words, Zynga "provid[es] a network of on-line games that can be played by subscribers of networking sites such as Facebook and MySpace."  *Id.* at ¶ 15.  Therefore, Zynga literally provides interactive computer services to users such as Plaintiff.

### b.   Plaintiff's Causes of Action Treat Zynga as a Publisher or Speaker.

Under the Ninth Circuit's interpretation of the CDA, Plaintiff's causes of action seek to treat Zynga as the "publisher or speaker" of third party content.  47 U.S.C. § 230(c)(1); *Barnes v. Yahoo!*, 570 F.3d 1096 (9th Cir. 2009).  In fact, the Complaint specifically asserts that Zynga is liable

---

[2]   The statute defines "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions."  47 U.S.C. § 230(f)(2).

10

because it is the publisher of third party content. According to Plaintiff, Zynga's role is that it "made available to users", "promulgated" or "published" third party ads. ¶¶ 2, 6, 10. This is exactly the type of liability against which the CDA immunizes interactive computer services.

In *Barnes v. Yahoo!*, the Ninth Circuit recently discussed how the label placed on a cause of action did not matter for CDA purposes – what mattered was the type of activity by the website that allegedly caused the Plaintiff's harm. 570 F.3d at 1101-1102. The words "publisher or speaker" meant that defamation was the "cause of action most frequently associated with" CDA section 230 immunity. However, there were many causes of action, including advertising-related claims, where liability would be premised on publishing activities and that the CDA would provide immunity. As the Court observed:

> [T]he language of the statute does not limit its application to defamation cases. Indeed, many causes of action might be premised on the publication or speaking of what one might call "information content." A provider of information services might get sued for violating anti-discrimination laws, *see, e.g., Roommates, 521 F.3d 1157*; for fraud, negligent misrepresentation, and ordinary negligence, *see, e.g., Doe v. MySpace, Inc.*, 528 F.3d 413 (5th Cir. 2008) . . . or even for negligent publication of advertisements that cause harm to third parties, *see Braun v. Soldier of Fortune Magazine, Inc.*, 968 F.2d 1110 (11th Cir. 1992). Thus, what matters is not the name of the cause of action – defamation versus negligence versus intentional infliction of emotional distress – what matters is whether the cause of action inherently requires the court to treat the defendant as the "publisher or speaker" of content provided by another.

*Id.* at 1101-1102.

The Court then cited to its prior decision in *Roommate.com* and to "common sense" to understand the broad scope of conduct that would fall within CDA immunity:

> We have indicated that publication involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content. *See Roommates*, 521 F.3d at 1170-71 ("[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230."). We need not perform any intellectual gymnastics to arrive at this result, for it is rooted in the common sense and common definition of what a publisher does. One dictionary defines "publisher," in relevant part, as "the reproducer of a work intended for public consumption" and also as "one whose business is publication." *See* Webster's Third New International Dictionary 1837 (Philip Babcock Gove ed., 1986). Thus, a publisher reviews material submitted for publication, perhaps edits it for style or technical fluency, and then decides whether to publish it. [footnote]. *See also Zeran*, 129 F.3d at 330 (listing "deciding whether to

11

publish, withdraw, postpone or alter content" as examples of "a publisher's traditional editorial functions").

*Id.* at 1102 (emphasis added).

Accordingly, under the CDA, causes of action that attempt to hold a website liable for decisions regarding whether to include or exclude third party content impermissibly treat the defendant as the publisher or speaker of that third party content. 47 U.S.C. § 230(c)(1); *Barnes*, 570 F.3d at 1102; *Roommate.com*, 521 F.3d at 1170-71. Both the Ninth Circuit and this Court have concluded that this applies with equal force to third party advertising content. *Barnes*, 570 F.3d at 1101 (citing negligent publication of advertising as example of cause of action seeking to treat entity as a "publisher"); *Goddard II*, 640 F.Supp.2d at 1195 (Google immune from claims seeking to hold it liable for allegedly providing tools that furthered fraudulent third-party advertising).

Here, Plaintiff alleges that she was deceived by third-party advertising that appeared in Zynga's games. The Complaint asserts that Zynga is liable because it "made available to users," "promulgated" or "published" third party ads. ¶¶ 2, 6, 10. Therefore, Plaintiff seeks to treat Zynga as a "publisher or speaker," a role for which Congress has specifically provided immunity in the CDA.

### c. Plaintiff Seeks to Hold Zynga Liable For the Content of Third Parties.

The consistent body of case law on Section 230 makes equally clear that Zynga cannot be held liable for "*any* information provided by another information content provider." 47 U.S.C. § 230(c)(1) (emphasis added). Section 230 extends immunity to service providers in all situations in which they did not participate in the "creation or development" of the particular online content on which a plaintiff bases her claims. 47 U.S.C. § 230(f)(3); *Roommate.com*, 521 F.3d at 1167-69. This Court recently dismissed very similar allegations in a class action complaint where the plaintiff sought to hold Google liable for the content of third-party advertisers. *Goddard II*, 640 F.Supp.2d at 1197-1201. Like Google's Adwords advertising service, Zynga offers a neutral set of tools for third-party advertisers to use to communicate with Zynga's users. *Id.* at 1196-1197 (citing *Roommate.com*, 521 F.3d at 1167-69). Plaintiffs are free to pursue the third-parties that actually caused the alleged harm, but the CDA immunizes providers that simply make the "neutral tools

12

[available] to create web content." *Id.* at 1196. While vaguely couched as a conspiracy, in reality Plaintiff here impermissibly seeks to hold Zynga responsible for content provided by third-parties.

The CDA immunizes an interactive computer service provider from liability for content provided by third parties. 47 U.S.C. § 230(c)(1). Liability resides squarely with the party or parties responsible for the "creation or development" of the content. 47 U.S.C. § 230(f)(2). The term "creation or development" means more than just "involvement." *Goddard v. Google, Inc.*, 2008 WL 5245490, at *3 (N.D.Cal. 2008) ("*Goddard I*") (citing *Roommate.com*, 521 F.3d at 1169 & n. 24, 1171, 1174 n. 37, 1175). It requires more than just offering a "framework" within which third party providers can insert their content. *Carafano*, 339 F.3d at 1124-25. It also requires more than retaining a right to exercise editorial control, choosing what content does/does not appear, or even actively promoting that content. *Batzel*, 333 F.3d at 1031-1032; *Blumenthal v. Drudge* ("*Blumenthal*") (D.D.C. 1998) 992 F.Supp. 44, 49-52. Rather, a plaintiff must allege that the website "materially contribute[d]" to the "alleged unlawfulness" of the content at issue – going beyond the mere provision of "neutral tools" for the third parties to use. *Roommate.com*, 521 F.3d at 1169 & n. 24.

Several cases illustrate the types of participation permitted by a website without removing the protections of the CDA. In these cases, the intermediaries were significantly more involved with the third party content than the allegations against Zynga, but CDA immunity nonetheless applied in full. In *Batzel*, the Ninth Circuit held that immunity applied to the operator of a listserv and website, even though he had selected the specific defamatory content for dissemination to his audience and had affirmatively edited some of the injurious material before distributing it. 333 F.3d at 1031. Similarly, in *Blumenthal*, the district court held that AOL could not be held liable for the content of a third-party news service it offered, even though AOL had contracted for the reports, retained certain editorial rights as to its content, and aggressively promoted the news service as an AOL feature. 992 F.Supp. at 49-52 (*accord, Batzel*, 333 F.3d at 1031 fn. 19). Additionally, in *Gentry v. eBay*, 99 Cal.App.4th 816, 833-834 (2002) ("*Gentry*"), the California Court of Appeal held eBay immune against claimed UCL and other statutory and common law violations based on eBay's alleged shortcomings in allowing fake autographed sports products to be sold on its website. These included

13

1  allegations that eBay "gave customers a false sense of confidence" in certain third-party sellers by

2  giving automated endorsements based on volume of sales and positive user feedback. *Id.* at 822.

3  The court held that these claims did not remove CDA immunity because eBay "did not create or

4  develop the underlying misinformation." *Id.* at 834 (*accord*, *Goddard I*, 2008 WL 5245490 at *3).

5  Plaintiff makes similar allegations here. Plaintiff alleges she was harmed by deceptive offers made

6  by third-party advertisers. Complaint, ¶¶ 16, 19. She seeks to hold Zynga liable because it "made

7  available to users," or "published," content created by third-parties. ¶¶ 2, 6, 10. This is exactly the

8  type of conduct against which the CDA immunizes Zynga.

9      CDA immunity applies equally when the interactive computer service derives a financial

10  benefit from making available third party information. "[T]he fact that a website elicits online

11  content for profit is immaterial; the only relevant inquiry is whether the interactive service provider

12  'creates' or 'develops' that content." *Goddard I*, 2008 WL 5245490, at *3 (citing *Roommate.com*,

13  521 F.3d at 1161, 1174-75, *Gentry*, 99 Cal.App.4th at 822, 828-31, and *Blumenthal*, 992 F.Supp. at

14  52). Nor could it be otherwise. One of the purposes of Section 230 was to "to promote the

15  development of e-commerce." *Batzel*, 333 F.3d at 1027. The CDA is not limited to non-profits.

16  Even though eBay receives a cut of each auction item sold on its website by third parties, and

17  Google receives payment for each third-party ad click, the CDA extends immunity to them even

18  when they do not filter out bad apples. *Gentry v. eBay*, 99 Cal.App.4th at 828-31; *Goddard II*, 640

19  F.Supp.2d at 1198. Similarly, the fact that Plaintiff alleges Zynga receives revenue as a result of

20  third-party advertising does not take Zynga outside of the protections of Section 230. Even if

21  Plaintiff's allegations were true, this is the type of conduct for which the CDA provides immunity.

22      Moreover, the CDA immunizes an interactive computer service even if the provider knows

23  that third parties are creating illegal content and still does nothing to prevent it. *Roommate.com*, 521

24  F.3d at 1169, fn. 24; *Zeran*, 129 F.3d at 333; *Barrett*, 40 Cal. 4th at 47, 51; *Gentry*, 99 Cal.App.4th

25  at 835; *Goddard I*, 2008 WL 5245490 at *3. As the seminal case on the CDA explained, one of

26  Section 230's main purposes was not to impose "liability upon notice," but rather to encourage self-

27  regulation and screening for questionable content. *Zeran*, 129 F.3d at 333. Therefore, acquiescence

28  by the provider would not create liability. *Roommate.com*, 521 F.3d at 1169, fn. 24. Even if all of

14

Plaintiff's allegations were true, Section 230 would still bar her claims against Zynga.[3]  Even if Zynga knew or should have known about offensive third-party conduct and did nothing, as the Complaint alleges, Zynga cannot be held liable.

These conclusions are confirmed by a recent CDA case from the Fourth Circuit, which cited extensively to both the *Iqbal* pleadings standard and the Ninth Circuit's CDA opinions concerning the creation or development of content for CDA immunity purposes.  *Nemet Chevrolet, Ltd. v. ConsumerAffairs.com*, __ F.3d ___, 2009 WL 5126224 (4th Cir. 2009) ("*Nemet*").  In that case, a car dealership brought claims for defamation and tortious interference with business expectancy against a website that allegedly posted consumer complaints but would also contact the authors to help them develop those complaints to make them attractive to plaintiffs' class action firms.  *Id.* at *1.  The plaintiff attempted to avoid CDA section 230 by claiming that the defendant website developed or created the content at issue by "contacting the consumer to ask questions about the complaint and to help her draft or revise her complaint, and promising the consumer that she could obtain some financial recovery by joining a class action lawsuit."  *Id.* at *4.

The Fourth Circuit held such allegations insufficient to survive a Rule 12(b)(6) motion to dismiss based on a CDA defense.  *Id.* at *6.  Citing to the Ninth Circuit's *Roommate.com* opinion, the court first observed that CDA section 230 immunity should be resolved "at the earliest possible stage of the case" so that websites could avoid costly and protracted litigation.  *Id.* At *2. (citing *Roommate.com*, 521 F.3d at 1175).  It further noted that under *Roommate.com*, unless a website operator *required* offending content to be published, the website operator would not be considered to have created or developed for CDA purposes even if it had helped draft or revise the consumer's complaints.  *Id.* at *5.  Moreover, the court held that the plaintiff's allegations were too vague under *Iqbal* to state a claim.  The allegations were "threadbare and conclusory" and did not "'show or even

---

[3]   In fact, if true, the allegations would be almost paradigmatic Section 230 self-regulatory conduct.  Plaintiff alleges that Zynga and Facebook took affirmative steps to address the third-party advertising at issue before this lawsuit was even filed.  ¶ 6.  This self-regulatory conduct is exactly the reason Congress enacted Section 230 – to encourage voluntary business decisions to address potential problems rather than "forcing websites to face death by ten thousand duck-bites [lawsuits]."  *Roommate.com*, 521 F.3d at 1174.

15

intimate' that Consumeraffairs.com contributed to the allegedly fraudulent nature of the comments at issue." *Id.* at *6 (quoting *Iqbal*, 129 S.Ct. at 1952). The plaintiff had not identified what the website operator revised or drafted, or how doing so made the content offensive. *Id.* Accordingly, the Fourth Circuit affirmed the district court's dismissal for failure to state a claim.

Here, in the Claims for Relief sections of Plaintiff's complaint (¶¶ 33-55), Plaintiff does literally nothing more than make a "formulaic recitation of the elements" of her claims. *Twombly*, 550 U.S. at 555. And in the factual allegations of her complaint (¶¶ 1-6, 14-25), Plaintiff does not identify any specific misrepresentations by Zynga with respect to the ads at issue. As already discussed, harm Plaintiff purportedly suffered came as a result of the alleged misconduct of third-party advertisers, not Zynga. *See,* ¶¶ 17, 21-24. Plaintiff simply makes the conclusory statement that Zynga "encouraged Plaintiff to accept the advertisement at issue." ¶ 25. Plaintiff's claims fail for their inability to make out the most minimal of factual allegations describing how Zynga's conduct caused Plaintiff harm.

### 4.    *Goddard v. Google, Inc.* Is Directly On Point and Requires That the Claims Against Zynga be Dismissed.

In *Goddard*, the Google advertising case recently dismissed with prejudice by Judge Fogel of this Court,[4] the plaintiff sought damages based on advertisements appearing next to Google's search results. Third-party advertisers placed ads that appeared next to certain search results depending on what the user typed into the search engine. The ads offered services for various mobile devices and – after clicking on the ads and entering their cell phone numbers – unexpected charges appeared on users' cell phone bills. 2008 WL 5245490 at *1. As here, rather than pursuing the third-party advertisers, the plaintiff sued the host. In an attempt to avoid the CDA, the plaintiff alleged that Google, via its advertising tools, both "'encourage[d]'" and "'collaborate[d] in the development of illegal conduct.'" 640 F.Supp.2d at 1195-1196. Also as here, the plaintiff alleged violation of the

---

[4]   Judge Fogel issued two opinions, the earlier one granting Google's motion to dismiss with leave to amend, *Goddard v. Google, Inc.*, No. C 08-2738 JF (PVT), 2008 WL 5245490 (N.D.Cal. Dec. 17, 2008) ("*Goddard I*"), and the latter one granting the motion to dismiss the amended complaint with prejudice. *Goddard v. Google, Inc.*, 640 F.Supp.2d 1193 (N.D.Cal. 2009) ("*Goddard II*"). Both motions were granted on very similar reasoning, and the published opinion made frequent citation to the prior unpublished opinion.

16

UCL on theory that Google was liable independent of the third-party content because it was receiving "tainted funds from fraudulent mobile content providers." 2008 WL 5245490 at *4.

Judge Fogel granted Google's motion to dismiss on the basis of Section 230 immunity, holding that "Plaintiff claims in essence that she was harmed because Google hosted certain online content, and her UCL claim effectively would hold Google liable for its publication of third-party content in contravention of § 230." *Id.* at *5. The Court also dismissed the aiding and abetting, negligence and breach of contract causes of action on similar grounds. *Id.* at *5-7; 640 F.Supp.2d at 1195-1196. However, Judge Fogel granted leave to amend if the plaintiff could allege that Google itself was an "information content provider" with respect to the content at issue, which would take Google outside of the protection of Section 230. 640 F.Supp.2d at 1195.

In response to that order, the plaintiff amended her complaint, alleging that "'Google's involvement [in creating the allegedly fraudulent advertisements] was so pervasive that the company controlled much of the underlying commercial activity engaged in by the third-party advertisers.'" *Id.* at 1196. The plaintiff also alleged that Google "'not only encourages illegal conduct, [but] collaborates in the development of the illegal content.'" *Id.* The Court granted the motion to dismiss the amended complaint with prejudice. *Id.* at 1202. The Court dismissed the amended assertions as "mere 'labels and conclusions' amounting to a 'formulaic recitation of the elements' of CDA developer liability." *Id.* at 1196 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Judge Fogel then analyzed the specific factual allegations of the complaint. The plaintiff claimed that Google was a developer, in part, of the offending content through its advertising keyword tool mechanisms. *Id.* at 1197. She claimed that Google's tools disproportionately suggested certain keywords (such as the use of the word "free" with "ringtone") despite knowing about problems with fraudulent charges in the mobile content industry. *Id.* She further alleged that Google representatives met with advertisers to help them with their creation of advertising on Google. *Id.*

The Court held that these allegations did not create liability for Google as the creator or developer of the offending content. *Id.* Citing Ninth Circuit precedent, the Court held the complaint still did not allege that Google materially contributed to the content so as to become an information

17

1  content provider. *Id.* (citing *Carafano*, 339 F.3d at 1124-1125.) Google merely provided tools that

2  could be used for any purpose. Judge Fogel observed:

> 3  Under *Carafano*, even if a particular tool "facilitate[s] the expression of information,"
> 4  *id.* at 1124, it generally will be considered "neutral" so long as users ultimately
> determine what content to post, such that the tool merely provides "a framework that
> 5  could be utilized for proper or improper purposes." *Roommates*, 521 F.3d at 1172
> (interpreting *Carafano*). Indeed, as already noted, the provision of neutral tools
> 6  generally will not affect the availability of CDA immunity "even if a service provider
> *knows* that third parties are using such tools to create illegal content." *Goddard*, 2008
> 7  WL 5245490, at *3 (emphasis added). As a result, a plaintiff may not establish
> 8  developer liability merely by alleging that the operator of a website should have
> known that the availability of certain tools might facilitate the posting of improper
> 9  content.

10  *Id.* at 1197-1198. Because Google merely developed a framework for advertisers to use as they saw

11  fit, Google could not be held responsible under the CDA for that usage by third-parties. *Id.* at 1199.

12  Finally, the court found its decision bolstered by Ninth Circuit precedent holding that any doubts as

13  to the "zone of CDA immunity" must be resolved in favor of immunity. *Id.* at 1202 (citing

14  *Roommate.com*, 521 F.3d at 1174). The court dismissed the plaintiff's claims without leave to

15  amend. *Id.* at 1202.

16        The present case presents a more compelling case for dismissal than *Goddard*. As in

17  *Goddard*, Plaintiff alleges that Zynga has created a platform for third-party advertisers to use.

18  Complaint, ¶¶ 10, 16. Also as in *Goddard*, Plaintiff alleges that misleading ads resulted in her being

19  charged *by third-party advertisers* for offers she did not want. ¶¶ 17, 21-24. However, here, unlike

20  in *Goddard*, there is no allegation that the ads at issue were created or developed by Zynga. *Cf.*

21  *Goddard II*, 640 F.Supp.2d at 1197 (allegation that Google's tools suggested keywords such as

22  "free" with the word "ringtone," thus developing the specific content at issue). Plaintiff claims that

23  through Zynga's design and promotion of its games Zynga actively encouraged users to click on ads.

24  ¶ 25. As Plaintiff describes it, the third-party ads are merely "made available to users" by Zynga (¶

25  2), "promulgated" by Zynga (¶¶ 6, 10) or, most tellingly, "published" by Zynga. ¶ 6; *see also* ¶ 16.

26  This is the classic type of conduct -- distributing the content of third parties -- which the Ninth

27  Circuit, and this Court, have repeatedly found that Section 230 of the CDA immunizes. The CDA

28  makes very clear that "No provider or user of an interactive computer service *shall be treated as the*

18

*publisher* or speaker of any information provided by another information content provider." 47

U.S.C. § 230(c)(1) (emphasis added). But that is exactly what Plaintiff is trying to do in the present

case. Rather than pursuing the parties that caused the alleged harm, Plaintiff is seeking damages

from Zynga, which according to Plaintiff "published" the content of third party advertisers. ¶ 6.

Such claims, no matter how couched or artfully pled, are not permitted against interactive computer

services such as Zynga or Facebook.

Plaintiff claims that Zynga created an advertising system that incentivized game players to

click on ads to earn virtual currency. But this fact, even if proven, would have no bearing on the

CDA immunity analysis. As cases involving Google, eBay, AOL and others make clear, websites

do not fall outside the CDA merely because they derive revenue from third-party content, even when

they encourage or promote the use of the third-party content. *See, e.g., Blumenthal*, 992 F.Supp. at

52-53 ("this Court would agree with plaintiffs [that] AOL … has affirmatively promoted Drudge"

nonetheless "Congress has made a different policy choice by providing immunity even where the

interactive service provider has an active, even aggressive role in making available content provided

by others."); *Goddard I*, 2008 WL 5245490, at *3; *Gentry*, 99 Cal.App.4th at 830 and 834

(discussion of effect of eBay's 'Power Sellers' endorsement on users). As in the above cases, Zynga

has merely created a neutral forum for *all* third-party advertisers to use. Complaint, ¶¶ 2, 16. The

alleged facts that Zynga makes money from its advertisers, or encourages its users to consider the

advertising offers that appear on Zynga's web pages, does not remove CDA protection. *Id.*[5] This is

similar to the set of allegations made against Google and dismissed by Judge Fogel.

---

[5] Plaintiff's allegation that "most, if not all" of the third-party ads are scams (¶ 17) is the type of abusive unsupportable factual contention that Rule 11 is designed to deter. Fed. R. Civ. Proc. Rule 11(b)(3). The unsupported nature of that contention is highlighted by the fact that plaintiff points to and complains about only two "special offers" from Zynga advertisers. ¶¶ 20-24. Moreover, a claim that "most, if not all" of Zynga's advertising-based revenue comes from scams, coupled with plaintiff's contention that Zynga allegedly knew about the scams, is a claim sounding in fraud. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (2009). As discussed below, Plaintiff's conclusory allegations not only fall short of the standards for a well-pled complaint, *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949, 1953 (2009), but fall woefully short of the pleading with particularity required for claims sounding in fraud under FRCP 9(b). *Kearns*, 567 F.3d at 1125.

19

1    Moreover, in *Goddard v. Google*, the plaintiffs alleged that Google suggested the word

2 "free" when the advertiser entered the word "ringtone." The plaintiff argued that this demonstrated

3 how Google allegedly created or developed the allegedly harmful content at issue. By contrast,

4 Plaintiff has not alleged any conduct by Zynga demonstrating how Zynga was involved in the

5 creation or development of the third party ads at issue. CDA immunity is therefore even more clear-

6 cut here than in *Goddard*.

7    **B.    The Complaint Sounds in Fraud But Is Not Pled With Particularity.**

8    A complaint must satisfy the particularity requirement of FRCP Rule 9(b) when a plaintiff in

9 a diversity case alleges that the defendant engaged in a course of fraudulent conduct, and that

10 conduct forms the basis of the plaintiff's state law claims. *Kearns v. Ford Motor Co.*, 567 F.3d

11 1120, 1125 (9th Cir. 2009). Here, Plaintiff's claims are grounded in the alleged intentional conduct

12 of Zynga. Plaintiff's allegations hinge on Zynga's purported role in a "fraudulent scheme" (¶ 1) as a

13 "co-conspirator[]" or "aider[] and abettor[]" (¶ 25) in third-party advertisers' attempts to "misle[a]d"

14 (¶ 10) people into clicking on "scam[]" ads that were "highly misleading." ¶ 17. But nowhere does

15 Plaintiff come close to alleging any *facts* to make out a claim of fraudulent conduct by Zynga.

16    Where claims are grounded in fraud, the complaint must plead in detail the nature of the

17 misleading conduct by the defendant. FRCP 9(b); *Kearns*, 567 F.3d at 1127 (citing *Vess v. Ciba-*

18 *Geigy Corp. USA*, 317 F.3d 1097, 1103-1104 (9th Cir. 2003)). The Ninth Circuit recently analyzed

19 the particularity requirement in the context of UCL and CLRA claims. In *Kearns*, the putative class

20 representative alleged that Ford's Certified Pre-Owned vehicle ("CPO") program violated the UCL

21 and CLRA. 567 F.3d at 1123. Specifically, the plaintiff alleged that Ford made false and

22 misleading statements concerning CPOs' safety and reliability, and that in doing so, Ford

23 intentionally misled consumers to believe that CPOs were more roadworthy than uncertified used

24 vehicles. *Id.* The plaintiff also alleged various ways that Ford's certification process for CPOs was

25 misleading and misrepresented the program. *Id.*

26    The Ninth Circuit held that the complaint failed to meet the heightened pleadings standard of

27 Rule 9(b). *Id.* at 1124-1125. The court observed that all claims brought in federal court, no matter

28 how styled, must be pled with particularity if grounded in fraud. *Id.* at 1125, 1127. The plaintiff

20

made the argument that his claims could be construed to allege "unfair" rather than "fraudulent" business practices under the UCL and CLRA, and thus were not necessarily grounded in fraud. The court rejected this argument out of hand. The court held that because the plaintiff alleged that Ford conspired with its dealerships to misrepresent the benefits of its CPO program, and that Ford's marketing materials and representations led him to believe that CPOs were better than regular used cars, the plaintiff was "alleg[ing] that Ford engaged in a fraudulent course of conduct." *Id.* at 1125-1126. As the plaintiff's allegations were based on this fraudulent conduct, the plaintiff failed to state a claim without pleading with specificity each of the elements of fraud.

The present case is more compelling than *Kearns*. In *Kearns*, the Ninth Circuit rejected the argument that the UCL and CLRA claims were not grounded in fraud even though it seemed that the plaintiff could arguably make out a case of "unfair" or negligent business practices. Here, by contrast, Plaintiff's claims all revolve around Zynga's alleged fraudulent intent to "actively encourage[] Plaintiff to accept the advertisement at issue" in spite of its purported knowledge that the ad was "false and misleading." Complaint, ¶ 25. Similarly, claims for common law restitution[6] must describe the defendant's "fraud, duress, conversion, or similar conduct" that caused the plaintiff's harm. *Rosal v. First Federal Bank of Calif.*, __ F.Supp.2d __, 2009 WL 2136777 at *16 (N.D.Cal. 2009) (quoting *McBride v. Boughton*, 123 Cal.App.4th 379, 388 (2004)). Plaintiff alleges that her harm arises from Zynga's alleged conspiracy with third-party advertisers or from aiding and

---

[6]   Plaintiff's third claim for relief is for "unjust enrichment." However, as this Court recently reiterated, "'there is no cause of action in California for unjust enrichment.'" *Rosal v. First Federal Bank of Calif.*, __ F.Supp.2d __, 2009 WL 2136777 at *16 (N.D.Cal. 2009) (quoting *Melchior v. New Line Productions, Inc.*, 106 Cal.App.4th 779, 793 (2003)). Rather, unjust enrichment is a general legal principle – a theory of recovery indistinguishable from restitution. *Id.* (citing *McBride v. Boughton*, 123 Cal.App.4th 379, 387 (2004); *Melchior v. New Line Productions, Inc.*, 106 Cal.App.4th 779, 784 (2003); *Lauriedale Associates, Ltd. v. Wilson*, 7 Cal.App.4th 1439, 1448 (1992).) Restitution may be awarded either (1) in lieu of breach of contract damages, where an asserted contract is found to be unenforceable or ineffective, or (2) where the defendant obtained a benefit from the plaintiff by "fraud, duress, conversion, or similar conduct," but the plaintiff has chosen not to sue in tort. *Rosal v. First Federal Bank of Calif.*, __ F.Supp.2d __, 2009 WL 2136777 at *16 (N.D.Cal. 2009) (quoting *McBride v. Boughton*, 123 Cal.App.4th 379, 388). Plaintiff alleges no breach of contract; therefore, plaintiff's claim must proceed under the latter theory.

21

abetting third-party advertisers. But nowhere does Plaintiff come close to meeting the elements of such fraud claims, failing to allege any *facts* that support the claims.

The elements of fraud under California law are: (1) a false representation, concealment, or nondisclosure; (2) knowledge of the falsity; (3) an intent to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Engalla v. Permanente Med. Group, Inc*., 15 Cal.4th 951, 974 (1997). Plaintiff has not pled these elements with specificity. As the Ninth Circuit has stated, a claim grounded in fraud must identify "the who, what, when, where, and how of the misconduct" that the defendant allegedly committed. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal citation and quotation marks omitted). The Complaint does not even provide the webpages or set out the specific misrepresentations upon which Plaintiff allegedly relied. It also does not allege any facts as to how Zynga was supposed to have known these third party ads were false, that is, whether Zynga knew that statements made in the ads were untrue, or what Zynga did to "actively encourage[] Plaintiff to accept the advertisement at issue." (Complaint, ¶ 25)

More fundamentally, Plaintiff's claims are so vague that it is difficult to discern what happened at all. That vagueness deprives Zynga of its ability to defend itself against Plaintiff's claims. For example, Plaintiff does not include any details about the first ad she allegedly completed. She states she gave her cell phone number "to a Zynga advertiser and/or lead generator" to receive a code she could redeem for points. ¶ 21. But she does not identify or describe the ad, explain what she thought the ad was for, or what she thought *would* happen in exchange for her entering her cell phone number. *See id*. As the Complaint repeatedly alleges, players are aware they can obtain game points by completing ads. *See, e.g.* ¶¶ 2, 16. What was the content of the ad that Plaintiff completed? What ad offer *did* Plaintiff think she was accepting?

None of these details can be discerned from the face of the complaint. Under *Kearns*, the Complaint must be dismissed as providing only conclusory allegations without any support.

////

////

////

22

# V.    CONCLUSION

For all the foregoing reasons, Zynga respectfully requests that Plaintiff's Complaint be dismissed with prejudice for failure to state a claim upon which relief can be granted.

Dated:  January 20, 2010                    DUANE MORRIS LLP


                                   By:    _____/s/_____
                                          Richard L. Seabolt
                                          Suzanne R. Fogarty
                                          Oliver E. Benn
                                          Attorneys for Defendant,
                                          ZYNGA GAME NETWORK, INC.

DM1\1983207.8

23