| | |
|---|---|
| 1 | GIBSON, DUNN & CRUTCHER LLP |
| 2 | GAIL LEES, SBN 90363<br>glees@gibsondunn.com |
| 3 | 333 South Grand Avenue<br>Los Angeles, California 90071-3197 |
| 4 | Telephone: (213) 229-7000<br>Facsimile: (213) 229-7520 |

GIBSON, DUNN & CRUTCHER LLP
GAIL LEES, SBN 90363
glees@gibsondunn.com
333 South Grand Avenue
Los Angeles, California 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520

S. ASHLIE BERINGER, SBN 263977
aberinger@gibsondunn.com
M. ELIZABETH CUTLER, SBN 261192
mcutler@gibsondunn.com
1881 Page Mill Road
Palo Alto, California 94304-1211
Telephone: (650) 849-5300
Facsimile: (650) 849-5333

Attorneys for Defendants
ADKNOWLEDGE, INC. and
KITN MEDIA USA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBECCA SWIFT, on behalf of herself and all others similarly situated,<br><br>            Plaintiff,<br><br>    v.<br><br>ZYNGA GAME NETWORK, INC., ADKNOWLEDGE, INC.; D/B/A SUPER REWARDS; KITN MEDIA USA, INC. D/B/A SUPER REWARDS;<br><br>            Defendants. | CASE NO. CV 09-5443 SBA<br><br>**DEFENDANTS ADKNOWLEDGE, INC. AND KITN MEDIA USA, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT AND MOTION TO STRIKE CLASS ACTION ALLEGATIONS**<br><br>Date:   June 29, 2010<br>Time:   1:00 p.m.<br>Place:  1301 Clay Street<br>        Oakland, California<br>        Courtroom 1<br>Judge:  The Honorable Saundra B. Armstrong<br><br>Complaint Filed: February 10, 2010 |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ............................................................................................................. 1

II. ARGUMENT ..................................................................................................................... 2

    A. CDA Section 230 Bars Plaintiff's Claims Against Adknowledge For "Aggregating" Third-Party Offers Alleged To Be False And Deceptive ..................... 2

        1. Plaintiff's Claims Squarely Arise From The Publication Of Third-Party Advertisements ................................................................. 2

        2. Adknowledge Is An Interactive Computer Service ........................................... 5

        3. The Complaint Fails To Allege That Adknowledge Materially Contributed To The Allegedly Deceptive Content At Issue .............................. 6

        4. Plaintiff's Claims Do Not Fall Within The CDA's Narrow Exception For Enforcement Of Federal Criminal Laws. ................................. 8

    B. Plaintiff Has Failed To Point To Any Specific Allegations That Satisfy The Heightened Requirements For Pleading A Claim Under The UCL ...................... 9

        1. Plaintiff Can Point To No Allegations Specifying The Time, Place or Content of The Allegedly Deceptive Third-Party Offers At Issue ................................................................................................. 10

        2. Plaintiff Has Not Specified Adknowledge's Supposed Role In The Alleged Fraud and Deception. ..................................................................... 12

        3. Rule 9(b)'s Pleading Standards Are Not "Relaxed" In This Case .................. 13

    C. Unjust Enrichment Is Not An Independent Claim ...................................................... 14

    D. Plaintiff's Class Allegations Should Be Stricken ....................................................... 14

III. CONCLUSION ................................................................................................................ 15

# TABLE OF AUTHORITIES

Page(s)

## CASES

*800-JR Cigar, Inc. v. GoTo.com, Inc.*,
    437 F.Supp.2d 273 (D.N.J. 2006) .................................................................................... 5

*Aron v. U-Haul*,
    143 Cal. App. 4th 796 (2006) ......................................................................................... 15

*Baghdasarian v. Amazon.com, Inc.*,
    258 F.R.D. 383 ................................................................................................................ 15

*Barnes v. Yahoo!*,
    570 F.3d 1096 (9th Cir. 2009) ......................................................................................... 4

*Batzel v. Smith*,
    333 F.3d 1018 (9th Cir. 2009) ......................................................................................... 6

*Countrywide Home Loans, Inc.*,
    No. 09 C 2450, 2010 U.S. Dist. LEXIS 3024 (N.D. Ill. Jan. 14, 2010) ........................ 14

*F.T.C. v. Accusearch, Inc.*,
    570 F.3d 1187 (10th Cir. 2009) .................................................................................. 4, 5

*Fair Housing Council of San Fernando Valley v. Roommates.com*,
    521 F.3d 1157 (9th Cir. 2008) ......................................................................................... 7

*Goddard v. Google*,
    2008 WL 524590, at n.5 .................................................................................................. 9

*Goddard v. Google*,
    640 F. Supp. 2d 1193 (N. D. Cal. 2009) ..................................................................... 1, 7

*Mazur v. eBay Inc.*,
    2008 WL 618988 (N.D. Cal. Mar. 4, 2008) .................................................................... 5

*Miletak v. Allstate Ins. Co.*,
    2010 WL 809579 (N.D. Cal. Mar. 5, 2010) .................................................................. 14

*Newson v. Countrywide Home Loans, Inc.*,
    2010 WL 2034769 (N.D. Cal., May 19, 2010, Armstrong, J.) ..................................... 14

## STATUTES

47 U.S.C. § 230(e)(1) ............................................................................................................... 9

# I. INTRODUCTION

Plaintiff's claims exemplify a rash of dubious "class action" filings that seek to exploit the broad reach of the Internet for maximum *in terrorem* effect, so as to demand large and wholly unjustified settlement payments from online companies like Adknowledge. Defending against such baseless actions imposes a substantial and unwarranted burden on legitimate online services, and strains innovation and the robust exchange of ideas and commerce on the Internet. This is precisely the circumstance Congress sought to avoid when enacting immunity under the Communications Decency Act ("CDA") for online services like Adknowledge that merely display third-party content to end users. Also for this reason, this Court recently emphasized that CDA immunity should be applied liberally to dismiss claims at the pleading stage, in view of the "special form of 'prejudice' to defendants who improperly are denied early dismissal of claims falling within the zone of CDA immunity." *Goddard v. Google*, 640 F. Supp. 2d 1193, 1202 (N. D. Cal. 2009).

Plaintiff's Complaint is a textbook example of the reasons Congress provided for broad immunity to online services that aggregate third-party content. Plaintiff's arguments are based on a reckless disregard for the factual operation of Internet networks and a grossly distorted portrayal of the online affiliate marketing companies, like Adknowledge, that furnish the economic infrastructure for much of the activity and content on the Internet. At the same time, Plaintiff's Complaint fails to allege the most basic facts necessary to state a legally sufficient claim for false advertising against Adknowledge under California's UCL and CLRA.

Plaintiff's opposition only underscores the deficiency of her claims. Because Plaintiff cannot avoid dismissal based on the allegations of her Complaint, Plaintiff resorts to inflammatory and improper accusations that are wholly lacking in factual support and appear nowhere in her pleading. Conspicuously, Plaintiff does not point to a single allegation that remotely supports her bald accusations of "theft" and "conspiracy." To the contrary, Plaintiff's Complaint and opposition repeatedly concede that Adknowledge functions solely as an online "middleman," which merely "aggregates" and displays third-party advertisements to end users on its online "interface." Because Plaintiff still cannot point to a single fact suggesting that Adknowledge played any role in creating the advertising content at issue here—much less that it contributed "materially" to any alleged

deception in those advertisements—her claims against Adknowledge are barred by the CDA under the well-settled decisions of this Court.

Separately, Plaintiff's opposition confirms that her claims lack any of the specificity required by Rule 9(b). Plaintiff fails to cite a single allegation specifying the Internet location of the two third-party offers at issue, the entities who advertised in those offers (and made the alleged misrepresentations), the contents of the offer (including the terms and conditions of the offers or the content alleged to be deceptive) or the specific role Adknowledge allegedly played with respect to the allegedly deceptive content. Instead, Plaintiff once again resorts to making up claims that are not in her Complaint and relies on allegations directed to the unidentified third parties who—unlike Adknowledge—are alleged to be responsible for the claimed deception.

In the end, Plaintiff's opposition confirms that she cannot plead a viable cause of action against Adknowledge. Consistent with the broad policies underlying CDA Section 230, her Complaint should be dismissed with prejudice.

## II. ARGUMENT

### A. CDA Section 230 Bars Plaintiff's Claims Against Adknowledge For "Aggregating" Third-Party Offers Alleged To Be False And Deceptive

#### 1. Plaintiff's Claims Squarely Arise From The Publication Of Third-Party Advertisements

Adknowledge's moving papers demonstrated that Plaintiff's claims are prohibited under Section 230 of the Communications Decency Act, because they are based entirely on two third-party advertisements that allegedly were published by Adknowledge on its online "interface." (*See* Adknowledge's Motion to Dismiss ("MTD") pp. 8-14.)

In an attempt to avoid the broad immunity afforded to online services, like Adknowledge, that merely "aggregate" and display third-party content on the Internet, Plaintiff's opposition asserts—without any support—that "plaintiff's false advertising and CLRA claims are not based on 'content'; rather they are based on *conduct*." (Plaintiff's Opposition ("Opp.") p. 5 (emphasis in original).) Conspicuously, Plaintiff does not point to a single allegation in her Complaint that supports this contrived claim. Nor could she. Plaintiff's false advertising claims, by definition, arise entirely from

ADKNOWLEDGE AND KITN MEDIA USA'S REPLY IN SUPPORT OF MOTION TO DISMISS           CASE NO. CV 09-05443 SBA

the content of the two third-party advertisements she contends were misleading.  (MTD pp. 11-14; *see* also Amended Complaint ("Compl.") ¶¶ 37-41.)

As Adknowledge's moving papers demonstrated, the only specific allegations Plaintiff directs to Adknowledge are that it was one of many online "offer aggregators" that "presented" third-party advertisements to end users of Zynga's games on its online "interface," including (allegedly) the two unspecified advertisements that give rise to Plaintiff's claims.[1]  (MTD pp. 6-7.)  Indeed, Plaintiff concedes that her claims against Adknowledge arise from publishing these offers throughout her opposition, as when she asserts that "Adknowledge was responsible for incorporating the third parties' fraudulent content into the ISOTs," (Opp. p. 8), and that "Adknowledge solicits fraudulent content from various third parties, aggregates the offers, and then arranges for these offers to be included in ISOTs that appear within Zynga's virtual marketplace," (Opp. p. 11).  Thus, Plaintiff's own admissions establish that the only "conduct" Adknowledge allegedly engaged in was to publish two third-party advertisements to Internet users of Zynga's games on its website "interface"— conduct that is squarely immunized under CDA Section 230.  (*See* MTD pp. 10-14.)  To the extent that Plaintiff's claims implicate any conduct beyond publishing advertisements on the Internet, it is solely the conduct of the unidentified third parties who allegedly charged Plaintiff's debit card or failed to cancel her participation in the offers at issue—conduct that Plaintiff concedes has nothing to do with Adknowledge. (MTD p. 5-7; Compl. ¶¶ 37-42.)

Because Plaintiff can find no support for her claims in the Complaint, she levels a slew of scurrilous and unfounded accusations that are entirely absent from her pleading.  Plaintiff calls Adknowledge a "co-conspirator in a scheme designed to steal money" and "an active participant and partner in the theft of millions of dollars," and even goes so far as to liken Adknowledge's affiliate advertising model—a model that provides the economic backbone for much of the content on the Internet—to a "bank robbery transaction."  (Opp. pp. 1-2, 6.)  Tellingly, Plaintiff never cites to the

---

[1] Although Plaintiff makes various conclusory allegations that "[Adknowledge] and/or Zynga" somehow "developed and created" the advertisements at issue, it is well-settled that such boilerplate, unsupported allegations fail to create a plausible inference in the absence of any supporting facts.  (MTD at 13-14.)

3

Complaint when lobbing these wild charges, and nothing in the Complaint (or otherwise) remotely supports these claims.

Despite Plaintiff's attempt to retreat from her pleading, the Complaint is clear: Plaintiff voluntarily participated in two offers that she now alleges were deceptive, and Adknowledge's alleged role with respect to those offers was purportedly to display the third-party advertisements from its computer servers within Zynga's online games. (MTD pp. 5-6, citing Compl. ¶¶ 8, 37, 38, 40, 42.) As demonstrated in Adknowledge's moving papers, courts consistently have held that such activity is the essence of "publication" entitled to immunity under the CDA. (MTD pp. 12-13.)

None of the cases Plaintiff cites alter this well-settled principle. Although Plaintiff relies heavily on the Ninth Circuit's decision in *Barnes v. Yahoo!*, 570 F.3d 1096 (9th Cir. 2009), that case only confirms that Plaintiff's claims are barred. Indeed, in *Barnes*, the Ninth Circuit *affirmed* that Yahoo! was immune because it had engaged in "publishing conduct" when posting offensive information by another user, even after receiving a request to remove it. *Id.* at 1103. By contrast, the Court held that Yahoo! was not immune from a claim for promissory estoppel because a Yahoo! employee had personally called the plaintiff and promised to remove offensive content. *Id.* at 1107. The Court explained, "[c]ontract liability [for the promissory estoppel claim] would come not from Yahoo's publishing conduct, but from Yahoo's manifest intention to be legally obligated to do something." *Id.* No such facts are alleged here. Instead, as in *Barnes*, Plaintiff impermissibly seeks to hold Adknowledge liable for "*publishing conduct*"—conduct that is squarely immunized under the CDA. *Id.* at 1103.

Likewise, Plaintiff's reliance on a concurring opinion from the Tenth Circuit is entirely misplaced. (Opp. p. 7, citing *F.T.C. v. Accusearch, Inc.*, 570 F.3d 1187 (10th Cir. 2009).) In *Accusearch*, the Tenth Circuit explicitly *rejected* the concurrence's view that defendant was not a publisher, concluding that defendant could not have violated the law had it not "published" the offending content at issue. *Id.* at 1197. Moreover, the facts at issue in *Accusearch* are entirely different than those presented here. There, the defendant was responsible for obtaining and selling private information about consumers and for actively encouraging others to illegally acquire that information—extensive offline conduct that led the Tenth Circuit to conclude that defendant was an

4

1  "information content provider" not entitled to CDA immunity. *Id.*  By contrast, Plaintiff alleges no
2  material conduct or involvement by Adknowledge in the allegedly deceptive content, "outside the
3  realm of the Internet" or otherwise.

4  Nor does Plaintiff allege facts remotely resembling those at issue in *Mazur v. eBay Inc.*  No. C
5  07-03967 MHP, 2008 WL 618988 (N.D. Cal. Mar. 4, 2008).  In *Mazur*, the Court held that while
6  eBay was immune under the CDA for screening those auctioneers that participated on its site,
7  "eBay's *assertions* . . . may still be actionable as affirmative misrepresentations." *Id.* at *9-10
8  (emphasis supplied).  Here, Plaintiff has not (and cannot) alleged that Adknowledge made any
9  affirmative representations, and instead bases her claim entirely on the content of two third-party
10 offers Adknowledge allegedly displayed.

11 Finally, Plaintiff cites an inapplicable District of New Jersey opinion that directly conflicts
12 with the binding decisions of the Ninth Circuit and this Court.  (Opp. p. 7 (citing *800-JR Cigar, Inc.
13 v. GoTo.com, Inc.*, 437 F.Supp.2d 273 (D.N.J. 2006).)  In a two-paragraph analysis, the court in *800-
14 JR Cigar, Inc.* declined to extend immunity to a search engine that suggested popular search terms to
15 pay-for-priority advertisers through an algorithm that included bids on other companies' trademarks.
16 *Id.* at 295.  Not only are these facts entirely inapplicable here, but the decision in *800-JR Cigar, Inc.*
17 plainly is not the law of this Circuit and directly conflicts with this Court's recent decision in
18 *Goddard v. Google*.  (*See* MTD pp. 13-14.)

19 In sum, Plaintiff cannot point to any "conduct" allegedly engaged in by Adknowledge that is
20 unrelated to its purported role in "aggregating" and "presenting" third-party offers from its Internet
21 "interface."  These activities are at the core of "publishing conduct" that the Ninth Circuit and this
22 Court consistently have held is entitled to immunity under the CDA.  (*Id.* p. 12-13.)

23 **2.  Adknowledge Is An Interactive Computer Service**

24 Plaintiff next argues that Adknowledge somehow is not an "interactive computer service"
25 within the meaning of the CDA.  (Opp. p. 8.)  Again, this argument is factually incorrect and belied
26 by Plaintiff's own allegations.

27 The Ninth Circuit has confirmed that an "interactive computer service" encompasses "'any'
28 information services or other systems, as long as the service or system allows 'multiple users' to

5

access 'a computer server.'" *Batzel v. Smith*, 333 F.3d 1018, 1030 (9th Cir. 2009).  Here, Plaintiff concedes that Adknowledge is one of many online "offer aggregators" that allegedly hosts "the interfaces within Zynga's games" from which "game users can select a 'special offer' in exchange for virtual currency." (Compl. ¶ 4.)  Thus, Plaintiff's own allegations establish that Adknowledge's "interface" is displayed to multiple end users of Zynga's online games, over Internet networks that necessarily link to Adknowledge's computer servers.  (*Id.*)  Adknowledge clearly meets the definition of an "interactive computer service," as broadly defined by the Ninth Circuit.[2]

As established by Adknowledge's moving brief, courts have uniformly held that online advertising platforms—like Adknowledge—that aggregate and display third-party advertisements are "interactive computer services" within the meaning of Section 230. (*See* MTD p. 10.)  Tellingly, Plaintiff fails to cite a single case to the contrary.

### 3. The Complaint Fails To Allege That Adknowledge Materially Contributed To The Allegedly Deceptive Content At Issue

In a last ditch effort to overcome the CDA's broad grant of immunity to online publishers like Adknowledge, Plaintiff concocts a series of arguments that appear nowhere in her pleading.  In a misguided attempt to establish that Adknowledge is an "information content provider," Plaintiff argues—without any support—that "Adknowledge actively solicits fraudulent third-party offers" and "serves as a buffer between parties it knows are trying to defraud consumers." (Opp. p. 12.)  But Plaintiff's Complaint does not contain a single allegation that even suggests that Adknowledge "solicited" or "encouraged" fraudulent offers from any third-party advertiser, or that it had *any* knowledge of the unspecified content that Plaintiff alleges was deceptive.  Nor would these allegations, even if made, be sufficient to avoid Section 230 immunity.

Plaintiff apparently invented these claims in an attempt to distinguish this case from this Court's recent decision in *Goddard v. Google*.  If anything, Adknowledge's alleged role is far less

---

[2] Moreover, Plaintiff concedes in her opposition that Adknowledge "brokers the transactions" between third parties and Zynga over the Internet, and concedes that "[t]he only way a third-party can participate in an ISOT is by going through an offer aggregator such as Adknowledge." (Opp. p. 11.)  This too is more than sufficient to meet the Ninth Circuit's broad definition of "interactive computer service."

extensive than the conduct alleged in *Goddard*, which this Court nonetheless held was immune under Section 230.  *See* 640 F.Supp.2d at 1201-1202.  The plaintiff in *Goddard* alleged that Google directly contributed to the allegedly misleading third-party advertisements that it displayed through its search engine by suggesting that advertisers use certain key words, including the allegedly misleading words, when composing their offers.  (*See* MTD pp. 13-14.)  Despite Google's alleged level of involvement in suggesting the challenged content to advertisers, the Court held that Google was immune.  *See* 640 F.Supp.2d at 1198.

By contrast, Plaintiff has made no specific allegation that Adknowledge played *any* role in developing the content of the third-party advertisements at issue, much less that Adknowledge "solicited" the specific, unidentified content alleged to be misleading.  Plaintiff alleges merely that Adknowledge was one of many "offer aggregators" that may have "presented" various third-party advertisements to end users through its "interface."  (Compl. ¶¶ 3, 37, 38, 40, 42.)  As in *Goddard*, Adknowledge functioned solely as a virtual and administrative link between end users and third-party advertisers—a role this Court consistently has held is entitled to immunity under the CDA.  (MTD p. 13.)

Likewise, Plaintiff's allegations do not come close to pleading a "direct and palpable" contribution to unlawful content like that at issue in *Fair Housing Council of San Fernando Valley v. Roommates.com*, 521 F.3d 1157 (9th Cir. 2008).  There, the Ninth Circuit held that Roomates.com was an "information content provider" because it had "materially contribute[ed] to [the] alleged unlawfulness" of the content by authoring user responses that could be selected from a pull-down menu and that utilized protected criteria to limit housing options.  *Id.* at 1167-1168.  Significantly, although Plaintiff suggests—again without support—that Adknowledge somehow "encouraged and enhanced" the offers allegedly displayed on its "interface" (Opp. p. 10), the Ninth Circuit held that these activities, even if alleged, would not rise to the level of involvement required to be an "information content provider": "[W]e interpret the term 'development' as referring *not merely to augmenting the content generally*, but to materially contributing *to its alleged unlawfulness*."  521 F.3d at 1167-69 (emphasis supplied) (noting as an example of material involvement in unlawfulness,

7

a website that "remove[es] the word 'not' from a user's message reading '[Name] did not steal the artwork' in order to transform an innocent message into a libelous one.").

Here, Plaintiff simply has not alleged (and could not allege) that Adknowledge made any contribution to the third-party advertisements allegedly displayed on its interface, much less that Adknowledge contributed materially to the unspecified portions of those advertisements that are alleged to be misleading. Indeed, elsewhere in her opposition, Plaintiff concedes that Adknowledge merely "serves as a broker or 'middle man' between Zynga and [the] third parties" who advertise in Zynga's games," (Opp. at 1), that "Adknowledge was responsible for incorporating the third parties' fraudulent content into the ISOTs," (Opp. p. 8), and that "Adknowledge solicits fraudulent content from various third parties, aggregates the offers, and then arranges for these offers to be included in ISOTs that appear within Zynga's virtual marketplace," (Opp. p. 11). It is well-settled that such activities are traditional publisher functions that do not contribute (much less materially) to the allegedly misleading nature of the content at issue. (*See* MTD pp. 12-13.)

Likewise, Plaintiff attempts to distinguish several cases cited by Adknowledge that applied CDA immunity on the grounds that those cases contained no allegation that the defendants "solicited," "encouraged," or "caused" the allegedly unlawful content at issue. (Opp. pp. 12-13.) But precisely the same is true here. Plaintiff has alleged no facts whatsoever creating a plausible inference that Adknowledge solicited or created the purportedly misleading content contained in the two third-party offers at issue, and does not point to a single allegation in her Complaint in support of this claim. Instead, Plaintiff concludes by arguing that Adknowledge's cases are distinguishable because "[i]n this case, *Zynga's* involvement in the fraudulent transactions is direct, material, and substantial." (Opp. p. 13.) Not only does Plaintiff cite to no support for this claim, but this argument provides no basis for finding that *Adknowledge* had any material involvement in creating the allegedly fraudulent content at issue.

### 4. Plaintiff's Claims Do Not Fall Within The CDA's Narrow Exception For Enforcement Of Federal Criminal Laws

Finally, Plaintiff argues that because her UCL claim involves advertisements that were displayed using "interstate communications wires," she somehow has alleged a violation of the

1  federal wire and mail fraud statutes that is exempt from the reach of Section 230.  (Opp. p. 13.)  This

2  argument goes nowhere and has been squarely rejected by this Court.

3        Section 230(3)(1) contains a narrow exception for enforcement of federal criminal statutes,

4  providing that "[n]othing in this section shall be construed to impair the enforcement of section 223

5  or 231 of this title, chapter 71 (relating to obscenity) or 110 (relating to sexual exploitation of

6  children) of Title 18, or any other Federal criminal statute."  47 U.S.C. § 230(e)(1).  Here, Plaintiff

7  does not seek to enforce any "Federal criminal statute," nor does she have standing to do so.

8        Moreover, Plaintiff has offered no support for the notion that Congress intended to forfeit

9  immunity for online service providers defending against private state law claims merely because a

10 plaintiff contends that such conduct was "unlawful" under federal criminal laws.  Indeed, this Court

11 recently rejected the identical argument made by Plaintiff here in *Goddard v. Google*:

> Plaintiff has provided no authority for such a potentially vast expansion of § 230 to include criminal provisions that are enforceable privately only through state law. Congress enacted § 230(e)(1) in order to 'ensure vigorous enforcement of Federal criminal laws to deter and punish trafficking in obscenity, stalking, and harassment by means of computer.' 47 U.S.C. § 230(b)(5). The broad 'unlawful' prong of California's UCL, which applies to any practice 'forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made,' *Wang v. Massey Chevrolet*, 97 Cal. App. 4th 856, 871 (2002), would appear to expand the narrow exception created by Congress well beyond its intended scope.
>
> No. C 08-2738 JF, 2008 WL 5245490, at n.5 (N.D. Cal. Dec. 17, 2008).

The same is true here.

                             * * *

      At bottom, Plaintiff's Complaint and opposition repeatedly concede that Adknowledge was nothing more than a virtual "middleman" that "aggregated" and "presented" third-party offers to multiple end users from its online interface.  This is precisely the type of conduct that courts consistently have held is entitled to immunity under the CDA.  Accordingly, Plaintiff's claims should be dismissed with prejudice.

**B.**      **Plaintiff Has Failed To Point To Any Specific Allegations That Satisfy The Heightened Requirements For Pleading A Claim Under The UCL**

      Adknowledge's moving papers established that Plaintiff's claims also fail because she has failed to allege any of the facts required to satisfy the heightened pleading requirements under Rule

9(b) applicable to claims under California's UCL and CLRA.  (MTD pp. 14-20.)  Plaintiff's opposition only confirms these deficiencies, which independently require dismissal of her claim.

### 1. Plaintiff Can Point To No Allegations Specifying The Time, Place or Content of The Allegedly Deceptive Third-Party Offers At Issue

As a threshold matter, Plaintiff cannot point to any allegations establishing "the time, place and content" of the allegedly false advertisements that give rise to her claims, as required.  (*See* MTD pp. 15-16.)  Plaintiff cannot even provide the date she participated in one of these third-party offers, instead asserting vaguely that she viewed it "in or around April 2009." (Opp. p. 16, citing Compl. ¶¶ 37-38.)  Rather than address the two offers at issue, Plaintiff points to details about her interactions with unidentified third parties who allegedly charged her debit card and refused to honor her cancellation request.  (Opp. p. 16 ("Plaintiff indicates precisely when she incurred unauthorized charges as a result of her participation in the [allegedly false third-party offers] and provides the precise dates on which she submitted her cancellation request.").)  But these allegations have *nothing to do with Adknowledge*, who is alleged merely to have distributed third-party advertisements through its Internet interface—and who had no involvement in processing the third-party offers Plaintiff signed up to receive or the alleged request by Plaintiff to cancel these offers.  Indeed, Plaintiff concedes in her Complaint that she sent an email to "the apparent manufacturer or the [green tea] supplements"—not Adknowledge—to cancel her free trial and was subsequently charged by an unknown entity named "Support Green Tea."  (Compl. ¶¶ 39-40.)  Plaintiff plainly cannot save her claims against Adknowledge with allegations directed to the unidentified third parties who allegedly are responsible for the misleading offers at issue.

Likewise, Plaintiff fails to specify basic information about the Internet location of the two advertisements at issue, including the Internet address or "URL" of the "interface" from which she participated in these advertisements.  Nor does she provide copies of the advertisements that would enable one to determine this information.  Instead, in her opposition, Plaintiff relies entirely on her claim that these advertisements were displayed in Zynga's online YoVille! game.  (Opp. p. 17.)  But because many different advertising networks (or "offer aggregators") hosted advertisements in Zynga's games—each from its own web sites—Plaintiff's allegations that she was directed to these

advertisements while playing YoVille! are no more helpful than alleging that a particular advertisement was accessed "on Google."

Nor does Plaintiff offer any allegations specifying the content of the two advertisements she contends were misleading, instead purporting to "describe" these advertisements in vague and insufficient terms. (Opp. p. 17.) For one of these advertisements, Plaintiff does not even identify the specific product or service she signed up to receive, instead stating merely (with no supporting facts) that the offer "failed to disclose that she would incur charges for her participation" in the unspecified product or service at issue. *Id.* Plaintiff still provides no information about the *content* of this offer, as required, including what product or service was being offered, the identity of the third-party making the offer, the terms of participation, or what specific statements are alleged to have been misleading. *Id.* Likewise, Plaintiff provides no details about the "Green Tea" offer she allegedly participated in, including the content of the offer, the party who made the offer, the stated terms of the offer, or the portions of the offer alleged to be deceptive. A simple search on Google reveals more than 10 million results corresponding to the search term "green tea offer." Absent specific information about the content, advertiser, and terms and conditions of the specific green tea offer that forms the basis of her claims against Adknowledge, Plaintiff cannot possibly satisfy the requirements of this Court for pleading claims for false advertising under the UCL. (*See* MTD pp. 15-18.)

Unable to supply any details about the two offers that give rise to her claims, Plaintiff claims that she "provided a detailed example of the 'IQ test' ISOT and referenced a weblink that displays video of the ISOTs that are the subject of this lawsuit." (Opp. p. 17.) But as this weblink confirms, this "detailed example" relates to an "IQ Test" that has *absolutely no connection to Adknowledge*, and apparently was hosted by a company called Double Ding.

In short, Plaintiff's opposition fails to provide even the most basic facts necessary to tie the two allegedly deceptive advertisements at issue to Adknowledge, or to put Adknowledge on notice of the "who, where, and what" of her claims. (MTD pp. 15-16.) Under precisely these circumstances, this Court repeatedly has dismissed claims under the UCL. *Id.*

**2. Plaintiff Has Not Specified Adknowledge's Supposed Role In The Alleged Fraud and Deception.**

Adknowledge demonstrated in its moving papers that Plaintiff's claims also fail because she has not alleged specific facts detailing Adknowledge's role in the alleged fraud, and instead relies on conclusory claims directed to all Defendants. (MTD p. 17- 20.) In response, Plaintiff argues (without any factual support) that Adknowledge participated in a "fraudulent scheme" and that she therefore is not required to identify the specific role that Adknowledge supposedly played in perpetuating this "scheme." (Opp. pp. 18-21.). This circular position is absurd.

Although Plaintiff argues that her "claims against Adknowledge rest on its particular role in creating and developing the deceptive and misleading [third-party offers.]" (Opp. p. 18), she conspicuously fails to cite a single allegation specifying what that "particular role" was. In fact, when arguing that she has somehow specified Adknowledge's role in the purported fraud, Plaintiff cites to only a *single paragraph* in her Complaint that even mentions Adknowledge. (Opp. pp. 18-22.) Far from describing Adknowledge's role in the purported fraud, that paragraph contains generic allegations purporting to describe Defendant Zynga's general business practice of "partner[ing] with an offer aggregator like, for example, the [Adknowledge] Defendants," and conclusory allegations that "Zynga and [Adknowledge] create and develop the interfaces within Zynga's games that allow Zynga game user to select a 'special offer' in exchange for virtual currency." (Opp. p. 19, citing Compl. ¶ 8.) Neither in that paragraph nor anywhere else in the Complaint does Plaintiff specify the role that Adknowledge purportedly played in connection with the allegedly deceptive third-party content that forms the basis of her claims.

Unable point to any allegations that satisfy the requirements of Rule 9(b), Plaintiff resorts to mischaracterizing her Complaint. For example, Plaintiff claims that "the FAC states that Adknowledge . . . functioned as a 'buffer' to shield Zynga from liability for ISOTs that the parties knew were false and misleading." (Opp. p. 19.) In fact, the Complaint—including the paragraph to which Plaintiff cites for this fiction—states no such thing. (*See* Compl. ¶ 8.) Likewise, Plaintiff claims that "Adknowledge was aware of the illegal nature of the [third-party offers] based on revenue

Gibson, Dunn & Crutcher LLP

1  received from the transactions for virtual currency." (Opp. p. 19.) Here, Plaintiff does not even

2  purport to cite to the Complaint, and nothing in her pleading supports this unfounded accusation.

3        At bottom, Plaintiff cannot point to a single, specific allegation that in any way connects

4  Adknowledge to the allegedly misleading advertising content at issue. Indeed, Plaintiff's allegations

5  supply no facts establishing even that Adknowledge, as opposed to many other "offer aggregators,"

6  displayed the two advertisements at issue. Instead, Plaintiff relies on boilerplate and conclusory

7  allegations of fraud that are directed to all "Defendants," and which this Court repeatedly has held are

8  insufficient to state a claim under the UCL. (MTD pp. 19-20.)

9        **3.    Rule 9(b)'s Pleading Standards Are Not "Relaxed" In This Case**

10       Finally, Plaintiff's suggestion that her claims somehow are not subject to the heightened

11 pleading requirements of Rule 9(b) flies in the face of well-settled authority. Plaintiff argues that

12 Rule 9(b)'s standards are "relaxed" when the factual allegations of fraud are "exclusively within the

13 defendants' possession." (Opp. p. 15.) But that is not remotely the case here. To the contrary,

14 Plaintiff—not Adknowledge—is exclusively in possession of information concerning the Internet

15 location of the two advertisements that give rise to her claims, the content (including the terms and

16 conditions) of those advertisements, the address to which she directed her alleged cancellation

17 requests, the entity who charged her debit card, and all other facts that give rise to her false

18 advertising claim. Yet Plaintiff furnishes none of these details in her Complaint, even as she

19 concedes that the allegedly culpable parties are an unspecified "manufacturer" and/or "business

20 partner" of Defendants, and not Adknowledge. (Compl. ¶¶ 37-40.)

21       Likewise, Plaintiff's reliance on a series of cases from other jurisdictions involving

22 "fraudulent schemes" is entirely misplaced here. (Opp. p. 15.) As discussed above, Plaintiff has not

23 made any allegations that Adknowledge participated in a "fraudulent scheme," much less that specify

24 Adknowledge's "purported role in [any] scheme." In fact, the paragraphs in the Complaint that

25 Plaintiff cites as evidence of this supposed "fraudulent scheme" *do not even mention Adknowledge*,

26 with the exception of a fleeting reference to the fact that Adknowledge is one of Zynga's many

27 "business partners". (Opp. p. 16, citing Compl. ¶¶ 35-36, 42.) Moreover, as Plaintiff concedes, a

28 plaintiff pleading a "fraudulent scheme" still must "state the 'time, place and content of the alleged

13

1  communications perpetuating the fraud.'" *Id.* p. 15, *citing Gaudie v. Countrywide Home Loans, Inc.*, No. 09 C 2450, 2010 U.S. Dist. LEXIS 3024, at * 11 (N.D. Ill. Jan. 14, 2010). As discussed above, Plaintiff meets none of these basic requirements here.

### C. Unjust Enrichment Is Not An Independent Claim

As demonstrated in Adknowledge's moving papers, unjust enrichment is not a recognized stand-alone cause of action in California. (MTD p. 20.) Just last month, this Court held that "[no] such cause of action [for unjust enrichment] is recognized under California law." *Newson v. Countrywide Home Loans, Inc.*, No. 09-5288, 2010 WL 2034769, at *7 (N.D. Cal., May 19, 2010, Armstrong, J.).

Ignoring this well-settled principle, Plaintiff points to Judge Ware's opinion in *Miletak v. Allstate Ins. Co.*, No. 06-03778, 2010 WL 809579 (N.D. Cal. Mar. 5, 2010), which is entirely inapplicable here. In *Miletak*, Judge Ware explained that "a court *may* look past the formal label of a claim for 'unjust enrichment' *if the allegations state a claim which allows for the type of recovery supported by the principle of unjust enrichment*." *Id.* at *8 (emphasis added). However, the Court confirmed that "Plaintiff's unjust enrichment claim *cannot stand alone as an independent cause of action*," even as it permitted the plaintiff to "seek *relief* based on an unjust enrichment theory." *Id.* (emphasis supplied). Here, Plaintiff impermissibly seeks to assert a stand-alone claim for unjust enrichment, but has alleged no valid claim that would support recovery for "unjust enrichment" or otherwise.

### D. Plaintiff's Class Allegations Should Be Stricken

Plaintiff now concedes that her proposed class definition is legally deficient because it is not limited to third-party offers hosted by Adknowledge, and instead encompasses offers displayed by numerous other "offer aggregators." (Opp. pp. 24-25.) But Plaintiff's proposed amendment does not repair her deeply flawed class allegations. As Adknowledge demonstrated in its moving papers, no amount of class discovery can salvage Plaintiff's hopelessly overbroad class allegations or lead to an ascertainable class, and her class allegations should therefore be stricken. (MTD p. 21.)

Although Plaintiff now argues that her class allegations are based on "a common course of fraudulent conduct that deceived and misled every putative class member" (Opp. p. 24), this finds no

14

support in her pleading.  In fact, the Complaint purports to define a class of all users who participated in advertisements or offers in Zynga's games, whether or not those offers were hosted by Adknowledge and *regardless of whether the user was deceived or in any way injured*.  (Compl. ¶ 42.)

*Aron v. U-Haul*, 143 Cal. App. 4th 796, 806 (2006) is entirely inapplicable.  As a threshold matter, Plaintiff has not limited the proposed class to those "likely to be deceived," an inquiry that inherently turns on the specific terms, conditions, and factual circumstances of each of thousands of unique third-party offers displayed by many different offer aggregators in one of Zynga's games.  Moreover, in *Aron* (unlike here), the proposed class had been exposed to *identical* language in a standard form truck rental agreement that was alleged to be deceptive, permitting a uniform determination of whether such language was likely to deceive class members.  *See id.; see also Baghdasarian v. Amazon.com, Inc.*, 258 F.R.D. 383, 385 (C.D. Cal. 2009) (addressing class allegations relating to uniform and identical conduct by Amazon).

By contrast, Plaintiff's deficient class allegations encompass all offers ever displayed during Zynga's games, irrespective of the content of those offers and whether or not any end user was deceived or harmed by those offers.  Under these circumstances, Plaintiff's class allegations cannot survive the pleading stage.  (*See* MTD pp. 21-22.)

### III.   CONCLUSION

For each of the reasons described above, Plaintiff's claims should be dismissed with prejudice.

DATED:  June 15, 2010

GIBSON, DUNN & CRUTCHER LLP

By:       /s/ Ashlie Beringer
           Ashlie Beringer

Attorneys for Defendants ADKNOWLEDGE, INC. and KITN MEDIA USA, INC.

Reply Brief.DOC

15
ADKNOWLEDGE AND KITN MEDIA USA'S REPLY IN SUPPORT OF MOTION TO DISMISS   CASE NO. CV 09-05443 SBA

Gibson, Dunn & Crutcher LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## PROOF OF SERVICE

I am employed in the City of Palo Alto, County of Santa Clara, State of California. I am over the age of 18 years and am not a party to this action. My business address is 1881 Page Mill Road, Palo Alto, California 94304, in said County and State. On June 15, 2010, I served the following:

**DEFENDANTS ADKNOWLEDGE, INC. AND KITN MEDIA USA, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT AND MOTION TO STRIKE CLASS ACTION ALLEGATIONS**

by placing a true copy thereof in an envelope addressed to the person named below at the address shown:

| | |
|---|---|
| **Benjamin G. Edelman, Esq.** | **John Robert Parker, Jr.** |
| 27a Linnaean Street | Kershaw Cutter & Ratinoff, LLP |
| Cambridge, MA 02138 | 401 Watt Avenue |
| | Sacramento, CA 95864 |

_X_   **BY MAIL**: I placed a true copy in a sealed envelope addressed as indicated above, on the above-mentioned date. I am familiar with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

___   **BY OVERNIGHT DELIVERY.** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses listed on the Service List. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

___   **BY PERSONAL SERVICE**: I placed a true copy in a sealed envelope addressed to each person[s] named at the address[es] shown and giving same to a messenger for personal delivery before 5:00 p.m. on the above-mentioned date.

___   **BY FACSIMILE**: From facsimile machine telephone number (650) 849-5333, on the above-mentioned date, I served a full and complete copy of the above-referenced document[s] by facsimile transmission to the person[s] at the number[s] indicated.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the foregoing document(s) were printed on recycled paper.

Executed at Palo Alto, California, on June 15, 2010.

                                                                                  /s/ Colleen Block
                                                                                      Colleen Block